UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MICHAEL L JUSTICE,                    §
                                      §
          Plaintiff,                  §
VS.                                   §    CIVIL ACTION NO. 2:12-CV-5
                                      §
E KENNEDY, *et al*,                   §
                                      §
          Defendants.                 §

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

On January 28, 2011, a Texas prisoner named Elmer Aaron died in a coma following an altercation with the plaintiff herein, Michael Justice. In the instant prisoner civil rights action, plaintiff claims that certain McConnell Unit officers and officials failed to protect him when they allowed him to be housed with the now deceased Aaron. In addition, plaintiff alleges that certain defendants retaliated against him for filing grievances, in violation of his First Amendment rights.

Defendants move for summary judgment to dismiss plaintiff's Eighth Amendment failure to protect claims on the grounds of failure to exhaust administrative remedies, and to dismiss his retaliation claim for failure to establish the "but-for" causation necessary to state a cognizable claim. (D.E. 71). Plaintiff has not filed a response in opposition.

For the reasons stated herein, defendants' motion for summary judgment is granted, and this case is dismissed with prejudice.

## I.      Jurisdiction.

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.   Upon consent of the parties (D.E. 11, 76), this case was referred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment.  *See* 28 U.S.C. § 636(c).

## II.     Procedural background.

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently confined at the McConnell Unit in Beeville, Texas.  He filed his original complaint on November 28, 2011, alleging various constitutional claims against numerous TDCJ-CID defendants.  (D.E. 1).

On August 8, 2012, a *Spears*[1] hearing was conducted and following which, certain of plaintiff's claims and defendants were dismissed, while the Court retained plaintiff's failure to protect claims against then unidentified John/Jane Doe correctional officers, and retained his retaliation claims against Food Service Captain Juan Salazar and the Law Librarian, Candace Moore.[2]  (D.E. 18).

By advisories filed on October 11, and November 29, 2012, the Attorney General, as Amicus Curie, reported that it could not identify the John/Jane Doe defendants whom plaintiff alleged failed to protect him by placing him in a cell with Offender Aaron.  (D.E. 32, 42).  In response, a telephone conference was conducted on December 11, 2012, at which time plaintiff

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] Plaintiff appealed the Order Dismissing Certain Claims and Retaining Case. (D.E. 24).  The Fifth Circuit dismissed the appeal as premature as no final judgment has yet been entered in this case.  (D.E. 64).

identified the defendants to be Officer Susan Sheelar, Officer Sylvia Brown, and Officer Andre Cantu.

Defendants were served on various dates and filed their answers.  (*See* D.E. 33, 51, 56).

Following an extension of time (D.E. 65), defendants filed the instant motion for summary judgment on April 19, 2013.  (D.E. 71).

To date, plaintiff has not filed a response in opposition to defendants' summary judgment motion.[3]

## III.    Summary judgment evidence.

In support of their motion for summary judgment, defendants offer the following evidence:

Ex. A:        Relevant portions of plaintiff's medical records;

Ex. B:        Report of the Office of Inspector General for Criminal Case No. 2010.04225;

Ex. C:        Relevant portions of plaintiff's grievance records;

Ex. D:        Affidavit of Sylvia Brown;

Ex. E:        Affidavit of Susan Sheelar;

Ex. F:        Affidavit of Juan Salazar;

Ex. G:        Affidavit of Candace Moore;

Ex. H:        Affidavit of Andre Cantu; and

Ex. I:        Affidavit of Warden Gary Currie.

---

[3] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

The summary judgment evidence establishes the following:

***Facts concerning the 12/21/10 encounter between plaintiff and Offender Aaron.***

On December 21, 2010, plaintiff's cell assignment at the McConnell Unit was changed to 7-Building, G-pod, 59-cell, and he was moved to that new housing assignment that same date. Defendant Officer Andre Cantu escorted plaintiff from his previous housing assignment to his new cell assignment on 7-Building.  (DSJ Ex. H, Cantu Aff't at ¶ 4).

At approximately 7:30 p.m. that evening, plaintiff called out to the roving officer, Officer Jessie Sanchez, and informed him that Offender Elmer Aaron needed to be removed from the cell, stating "[c]ause I just beat his ass."[4]  (DSJ Ex. B, OIG-197).  Medical personnel arrived to find Offender Aaron unconscious in plaintiff's cell.  *Id.* OIG-50.  Offender Aaron was transported to Christus Spohn Hospital in Beeville where he remained in a coma and on life support.  *Id.,* OIG-76-89.  On December 22, 2011, Offender Aaron was transferred to the intensive care unit at Christus Spohn Memorial Hospital in Corpus Christi, Texas.  *Id.,* OIG-90-116.  An MRI of his brain revealed significant brainstem injury "possibly related to direct assault," and he remained unresponsive.  *Id.,* OIG-116.  On December 28, 2010, Offender Aaron was transferred to Hospital Galveston for continued care in a persistent vegetative state.  *Id.,* OIG-165.  On January 21, 2011, Offender Aaron was discharged to the Michael Unit for hospice. *Id.,* OIG-176.  Offender Aaron was pronounced dead on January 28, 2011.  *Id.,* OIG-207-08.

Anderson County authorities ordered an autopsy and investigation into Offender Aaron's death.  (DSJ Ex. B, OIG-209).  The preliminary cause of death found by the Galveston County Medical Examiner's Office was homicide.  *Id.,* OIG-191.

---

[4] In an investigation of the altercation, it was alleged that plaintiff did not want to be in a cell with Offender Aaron because he believed Aaron was a homosexual.  (DSJ Ex. B, OIG-12).  Offender Aaron made advances toward plaintiff, and in response, plaintiff "began punching and kicking Offender Aaron 60 to 100 times."  *Id.*

On December 22, 2010, the date following plaintiff's altercation with Offender Aaron, plaintiff was charged in a prison disciplinary hearing with assault without a weapon. (DSJ Ex. B, OIG-193). A disciplinary hearing was held on December 30, 2010, but plaintiff refused to attend. *Id.* at 202. The disciplinary hearing officer reviewed a photograph of Offender Aaron's documented injuries, as well as Aaron's medical reports as of the date of the hearing, and found plaintiff guilty as charged. *Id.* at 193. As punishment, plaintiff received 15 days recreation restriction, loss of 30 days commissary, and loss of 319 days good time credit. *Id.*

Following Offender Aaron's death, on February 2, 2011, Investigator David M. Guajardo with the Office of the Inspector General ("OIG") informed plaintiff that he was a suspect in the homicide of Offender Aaron and he read plaintiff his Miranda rights. (DSJ Ex. B, OIG-40-41). Plaintiff refused to sign the written warning statement. *Id.*

On November 21, 2011, the OIG prepared its written report and investigation alleging that on December 21, 2010, plaintiff had murdered Offender Elmer Aaron without a weapon in violation of Texas Penal Code § 19.02(b)(1). (DSJ Ex. B, OIG at 8-41).

On March 8, 2012, the OIG presented its written report and investigation concerning Offender Aaron's death to the Special Prosecuting Unit ("SPU") in Bee County, Texas, and the SPU accepted the charges. (DSJ Ex. B, OIG at 5-6).

On March 29, 2012, a Bee County Jury no billed plaintiff on the murder charge. (DSJ Ex. B, OIG-5). A notation in the OIG file states that all of the evidence had been lost. *Id.*

***Plaintiff's grievances.***

On March 18, 2011, plaintiff filed a Step 1 grievance, Grievance No. 2011121224, alleging that on February 14 and 27, and March 12, 2011, defendant Candace Moore, the McConnell Unit law librarian, had refused to respond to I-60s seeking "legal" information

concerning the criminal charges against him.   (DSJ Ex. C at 27-28).   In particular, plaintiff had

sent I-60s to Ms. Moore requesting under the Opens Records Act the names of the employees

who had worked on December 21, 2010.[5]   *Id.*   He claimed also that he had been denied legal

supplies.  *Id.*   An investigation was conducted on plaintiff's claims, and by response dated April

13, 2011, Warden Davis denied the grievance stating that plaintiff could not be provided with a

copy of the "216 Activity Log," and also finding that plaintiff had received his indigent supplies

per TDCJ policy.   *Id.* at 28.   Plaintiff appealed that grievance, (DSJ Ex. C at 19-20), and on May

13, 2011, the Region IV Grievance Investigator Vicki Barrow replied that, for access to courts

purposes, offenders were entitled to receive only copies of TDCJ documents listed on "ORA-

01.02," a copy of which she attached to her response, as well as a "current employee roster" from

the law library.   *Id.* at 20.

On July 6, 2011, plaintiff filed a Step 1 grievance, Grievance No. 2011192187,

complaining that Ms. Moore had denied him indigent supplies, and he requested that he be

provided 25 pieces of paper and 1 pencil.  (DSJ Ex. C at 17-18).   By response dated August 9,

2011, Warden Jackson denied the grievance stating that records reflected plaintiff had been

issued additional supplies as he exhausted earlier supplies.[6]  *Id.* at 18.

On August 2, 2011, plaintiff filed a Step 1 grievance, Grievance No. 2011208834,

complaining that Ms. Moore had denied him the ability to send personal mail on July 20, 29, and

August 1, 2011, and had also denied him indigent legal supplies.  (DSJ Ex. C at 4-5).   An

---

[5] Plaintiff explained that he wanted to provide the names of the officers working the evening of December 21, 2010, to his criminal defense lawyer in preparation for his criminal trial in Bee County.  (DSJ Ex. C at 27).

[6] On August 23, 2011, plaintiff filed a Step 2 appeal of Grievance No. 2011192187.  (DSJ Ex. C at 15-16).   On September 22, 2011, his Step 2 appeal was denied.

investigation was conducted, and by response dated September 7, 2011, the Step 1 grievance was denied.[7] *Id.* at 5.

## IV.  Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *Caboni v. Gen. Motors Corp.,* 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

---

[7] On September 15, 2011, plaintiff filed a Step 2 appeal of Grievance No. 2011208834l.  (DSJ Ex. C at 3-4).  The Step 2 appeal was denied on October 7, 2011, with the finding that the Step 1 response had adequately addressed plaintiff's complaint.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp* .,  475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

## V.    Defendants' summary judgment motion.

In his original complaint and at the August 6, 2012 evidentiary hearing, plaintiff alleged that on December 21, 2010, Officer John Doe (later identified as Officer Cantu), escorted him from his previous housing to 7-Building, and at 7-Building, Officer Cantu transferred him to the custody of two Jane Doe officers, now identified as Officer Sheelar and Officer Brown.  He alleged that he told defendants that "something was wrong" with Offender Aaron, although he admitted that he did not refuse his cell assignment or ask to speak to a supervisor.  Plaintiff

contends that Officer Cantu, Officer Sheelar, and Officer Brown were deliberately indifferent to his safety by participating in his transfer to the new cell in 7-Building. Officers Sheeler, Brown and Cantu move for summary judgment to dismiss plaintiff's claims for failure to exhaust administrative remedies arguing that plaintiff never filed a grievance alleging failure to protect against them, or otherwise notifying defendants or prison officials that plaintiff believed these defendants had violated his constitutional rights.[8]

### A. Exhaustion.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.

---

[8] These defendants also move for summary judgment on the merits of plaintiff's claims. Officer Sheelar testifies that she did not work on December 21, 2010, and as such, could not have participated in escorting plaintiff to the new cell or placing him in a cell with Offender Aaron. (DSJ Ex. E, Sheelar Aff't at ¶ 4). Indeed, Officer Sheelar offers the shift rosters to demonstrate that she was not working on that date. *Id.* Officer Brown testifies that on December 21, 2010, she was posted as the 3 Building Picket Officer for the first half of the shift, from 6:00 p.m. to midnight, and that as the picket officer, she would not have escorted any prisoner, and did not escort plaintiff, to his new cell in 7-Building. (DSJ Ex. D, Brown Aff't at ¶ ¶ 4, 5). Finally, Officer Cantu testifies that he did work as a chain officer on December 21, 2010, and as such, he may have escorted plaintiff to his new housing assignment as part of his duties; however, he states that, had plaintiff attempted to deny his housing assignment, a supervisor would have been called, and there is no evidence that this occurred. (DSJ Ex. H, Cantu Aff't at ¶ ¶ 4, 5).

*Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints.  *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances.  *Powe v. Ennis,* 177 F.3d 393, 394 (5th Cir. 1999) (per curiam).   The Fifth Circuit requires that both steps be completed in order to file suit in federal court.  *Johnson v. Johnson*, 385 F.3d 503, 515-16 (5th Cir. 2004).[9]

The summary judgment evidence establishes that, during the time period of June 2010 to the present, plaintiff filed three Step 1 grievances and related appeals.  (DSJ Ex. C).   Of these three grievances, only Grievance No. 2011121224, filed on March 18, 2011, could be construed as referring to defendants Sheelar, Brown, and Cantu.  (DSJ Ex. C at 27-28).   In that grievance, plaintiff requests that Librarian Moore provide him with the names of officers working on December 21, 2010 so that he can provide those names to his criminal attorney concerning the murder charges filed against him by Bee County.  *Id.* at 27.   Plaintiff does not contend in this grievance that he is seeking to discover the names of these officers because he believes they failed to protect him on December 21, 2010, or otherwise violated his constitutional rights; he is simply attempting to gather information for use in his criminal case.

---

[9] Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the issue he is complaining about.  *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998).  The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has ten days to appeal by filing a Step 2 grievance.  *Wendell*, 162 F.3d at 891.  Once the two-step process has been completed, the offender's administrative remedies within the TDCJ have been exhausted.  *See*  http://www.tdcj.us/publications/admin-rvw/Offender%20Grievance%20pamphlet%202007.pdf.  Thereafter, an inmate dissatisfied with the disposition of his Step 2 grievance may file suit in district court.  *See* 42 U.S.C. § 1997e(a).

In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  *Johnson*, 385 F.3d at 517.  The Court noted that one of the purposes of the exhaustion requirement is to give officials "'time and opportunity to address complaints internally.'"  *Id.* (citations omitted).  In addition, the nature of the complaint will influence how much detail is necessary.  *Id.*  For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition might not identify any individual.  *Id.*

Plaintiff's Grievance No. 2011121224, requesting the names of numerous officers that were working on December 21, 2010, does not allege that any of those officers were aware of a serious risk to his health and safety and then deliberately ignored that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) (a prison official is deliberately indifferent to the inmate's safety if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it).  Indeed, plaintiff's March 18, 2011 grievance does not purport to complain about the actions or conduct of any officer, let alone a defendant herein.  Thus, this grievance fails to alert prison officials as to plaintiff's alleged failure to protect claims against the defendants, the very purpose of the administrative grievance process.  *See Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006) (noting that the purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court).  Moreover, at the December 30, 2010 disciplinary hearing, and later, when he was notified by OIG that he was being charged with murder, plaintiff did not suggest that Officers Sheelar, Brown or Cantu had placed his life in danger or had failed to protect him in any statement to investigators.  (*See* DSJ Ex. B).  Thus, the uncontroverted evidence establishes that plaintiff did not file a Step 1 or Step 2 grievance

against defendants Sheelar, Brown, or Cantu, and as such, he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

The Fifth Circuit has recognized that the exhaustion requirement may be excused in rare and extraordinary circumstances.  *See e.g. Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003) (holding a prisoner who was unable to timely file a grievance due to a physical injury had satisfied the exhaustion requirement) *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 215 (2006).  However, in failing to file a response to defendants' summary judgment motion, plaintiff has failed to argue, let alone offer any facts to suggest, that he should be excused from exhausting his administrative remedies.  Moreover, there is no evidence to suggest that plaintiff was physically unable to file grievances.  Indeed, following the December 21, 2010 altercation with Offender Aaron, plaintiff was evaluated by medical before being placed in pre-hearing detention, and he was found to have suffered no injuries.  (DSJ Ex. A at 3-10).  Similarly, plaintiff does not contend, nor is there any evidence to suggest, that prison officials prevented him from accessing the grievance system, and as evidenced by DSJ Ex. C, plaintiff has previously grieved other claims.

There is no genuine issue of a material fact that plaintiff has failed to exhaust his administrative remedies concerning his failure to protect claim against Officer Sheelar, Officer Brown, and Officer Cantu, and there is no evidence to demonstrate that exhaustion should be waived.  Thus, plaintiff's failure to protect claims against these officers are dismissed with prejudice for failure to exhaust administrative remedies.[9]

---

[9] Generally, a dismissal for failure to exhaust is without prejudice; however, as plaintiff's grievances would now be untimely under TDCJ-CID policies, dismissal with prejudice is appropriate.  *See Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) (dismissal with prejudice warranted when administrative relief is time-barred or otherwise precluded).

### B.      Retaliation.

Plaintiff claims that Ms. Moore and Captain Salazar retaliated against him for filing grievances.   He alleges that Ms. Moore denied him indigent supplies, including writing materials, and that Captain Salazar denied him access to a pork-free diet.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights.  *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972).  Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'"  *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008), quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) .  "A prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).  However, the Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts."  *Adeleke v. Fleckenstein*, 385 Fed. Appx. 386, *1 (5th Cir. Jul. 12, 2010) (unpublished), *citing Wood*, 60 F.3d at 1166.

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.   *Morris*, 449 F.3d at 686.  However, some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights.  *Id.*  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.

*Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act.[10]  *Id.* at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing   *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998).  An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).  Mere conclusory allegations of retaliation will not withstand a summary judgment challenge.   *Woods*, 60 F.3d at 1166.  *And see Garner v. Moore*, _____ Fed. Appx. _____, 2013 WL 3726801 (5th Cir. Jul 17, 2013) .

### *Law librarian Candace Moore*.

In February 2011, plaintiff sent numerous I-60 requests to Ms. Moore to discover the names of the officers working on December 21, 2010; however, Ms. Moore ignored his requests and did not provide him with the information.  On March 18, 2011, plaintiff filed a grievance complaining about Ms. Moore's failure to answer his I-60s.  (DSJ Ex. C at 27-28).  Plaintiff

---

[10]  The Fifth Circuit has not specifically defined "the quantum of injury necessary to constitute an 'adverse act' for purposes of a retaliation claim.  *Hart v. Harrison*, 34 F.3d 762, 764 (5th Cir. 2003).  However, the frequency and length of the retaliatory action are to be considered. *Id.*  For example, in *Hart*, the Fifth Circuit found that 27 days of cell restriction and loss of commissary privileges was not *de minimis*.  *Id.* at 765.  However, in *Morris*, the Fifth Circuit concluded that a 10-day loss of commissary privileges as punishment for a disciplinary offense was no more than a *de minimis* adverse act.  *Morris*, 449 F.3d at 686.  The Fifth Circuit has found that the denial of two meals over an eight-month period is *de minimis* and cannot support a claim of retaliation.  *Romero v. Lann*, 305 Fed. Appx. 242, *1 (Dec. 28 2008) (unpublished).  Similarly, a single incident in which a prisoner is not allowed to eat is *de minimis. Dickerson v. Johnson*, 234 F.3d 29 (5th Cir. 2000).  Denial of recreation on one occasion is a *de minimis* injury and  does not constitute  an "adverse retaliatory act," for purposes of stating a retaliation claim.  *Cf. Ford v. Jones*, 2006 WL 3488954 (S.D. Tex. 2006) (unpublished), citing *Morris*, 449 F.3d at 686.

claims that, in retaliation for his filing this grievance and the earlier I-60s, Ms. Moore then refused to give him indigent supplies or to process his mail.

In response to plaintiff's allegations. Ms. Moore testifies:

> Offender Justice claims he was denied indigent legal supplies.  A review of the records shows that Offender Justice was issued the full amount of the personal and legal indigent supplies to which he was entitled.  Offenders must show that they have exhausted previously issued supplies by actually using the supplies.  This requirement prevents indigent offenders from using supplies as currency and trading supplies as contraband.  Some indigent supplies, like pens, require that the offender trade-in the old for a new one.  Because TDCJ has limited resources and supplies to give out under the indigent supply program, failure to adhere to these rules will result in the denial of an offender's request for indigent supplies.

> The records indicate that Offender Justice requested indigent supplies approximately every other day and his requests were fulfilled as the rules allowed.  I did not deny Offender Justice indigent supplies at any time for any reason other than his failure to follow the TDCJ policy requirements for requesting indigent supplies.

(DSJ Ex. G, Moore Aff't at ¶¶ 4-5).

An essential element of a retaliation claim is the ability to show causation, i.e., that the complained of conduct would not have occurred absent the retaliatory motive.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).  Here, plaintiff fails to offer any facts to demonstrate that, but for filing a grievance against Ms. Moore, he would have received additional indigent supplies as requested or that his mail would have been handled in a different manner.  To the contrary, the undisputed evidence demonstrates that plaintiff's complaints about indigent supplies were investigated and it was determined that he did receive his supplies when

he followed procedure.  (*See* DSJ Ex. C at 31-42, investigating Grievance No. 2011121224; Ex. C at 20-27, investigating Grievance No. 2011192187; and Ex. C at 7-15, investigating grievance No. 2011208834).  Although he complained in his August 2, 2011, grievance that he was denied the right to send personal mail on three dates, he did not pursue this claim in his Step 2 appeal, thus abandoning it.  (*See* DSJ Ex. C at 3-4).  Plaintiff's allegations of retaliatory animus against Ms. Moore are wholly conclusional, amounting to no more than his personal belief that he was retaliated against, and as such, are insufficient.  *Johnson*, 110 F.3d at 310.  According, Ms. Moore is entitled to summary judgment in her favor on plaintiff's claim of retaliation, and this claim is dismissed with prejudice.

### *Captain Salazar.*

Following the altercation with Offender Aaron on December 21, 2010, plaintiff was placed in administrative segregation, and once there, he did not receive pork-free meal trays. Plaintiff wrote I-60s to the kitchen supervisor, Captain Salazar, but the problem was not remedied until June 2011, during which time, plaintiff lost 15 pounds.  Plaintiff claims that Captain Salazar purposely delayed his receipt of the proper diet in retaliation for plaintiff filing grievances in an attempt to receive the correct diet.

Captain Salazar is the McConnell Unit kitchen supervisor and is in charge of food services.  (DSJ Ex. F, Salazar Aff't at ¶ 5).  In general population, there is no list of offenders that eat a pork-free diet; instead, offenders select a pork-free tray when in line for chow.  *Id.*  In contrast, prisoners housed in administrative segregation take their meals in their cells.  *Id.*  at ¶ 4. Pursuant to TDCJ-CID Food Services Manual, section 13.07, Menu Selection, a prisoner housed in administrative segregation who desires a pork-free diet must submit his request to the highest ranking official of administrative segregation, which at the time of plaintiff's request was a

Major.  *Id.* at ¶ 4.  It was then the Major's responsibility to approve or deny such requests, and to compile a list of prisoners requesting pork-free trays to be delivered to administrative segregation.  *Id.*  As such, Captain Salazar had  "… no personal knowledge of Offender Justice's request for a pork-free diet while in administrative segregation, nor would any such requests be directed to my office."  *Id.*

In failing to file a response to the summary judgment motion, plaintiff offers no evidence to rebut Captain Salazar's testimony that he never received plaintiff's requests to be placed on a pork-free diet and, even if he had, he had no authority to do so as this was the responsibility of the administrative segregation Major.  Thus, to the extent plaintiff claims that Captain Salazar purposely delayed his receiving a pork-free diet in retaliation for plaintiff filing I-60's about being not receiving a pork-free diet, he fails to establish that, but for a retaliatory motive, the complained of action would not have occurred.  To the contrary, as explained by Captain Salazar, plaintiff was required to request a pork-free diet upon his transfer to administrative segregation, and it was the responsibility of the administrative segregation Major to approve (or deny) the request so that plaintiff would receive the proper food tray.  (DSJ Ex. F, Salazar Aff't at ¶5). Plaintiff fails to state a cognizable claim of retaliation against Captain Salazar, and accordingly, this claim is dismissed with prejudice.

## VI.    Conclusion.

There is no genuine issue of a material fact that plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) as to his failure to protect claims against defendants Officer Sheelar, Officer Brown and Officer Cantu, and therefore, defendants' motion for summary judgment to dismiss those claims for failure to exhaust (D.E. 71) is

GRANTED.   Plaintiff's claims against Officer Sheelar, Officer Brown and Officer Cantu are dismissed with prejudice for failure to exhaust administrative remedies.   Moreover, the summary judgment evidence refutes plaintiff's allegations that Captain Salazar or Librarian Moore acted in retaliation for plaintiff filing grievances, and summary judgment is granted in their favor, and plaintiff's claims against them are dismissed with prejudice.

ORDERED this 8th day of August, 2013.

Jason B. Libby
United States Magistrate Judge

18 / 18